The first case on the calendar is Abdullayeva v. Attending Home Care Services. Good morning, Your Honors. Good morning. I guess it's arbitration day at the court today. May it please the court, my name is Daniel Gomez-Sanchez and I represent defendant appellant in this matter. On this appeal, we contended the district court erred in denying the appellant's motion to compel arbitration, which was required by the amendment to the collective bargaining agreement between appellant and the union, Local 1660. We make two points on this appeal. One, the arbitration provision at issue, which is located on pages 52 and 53 of the joint appendix, satisfies the Federal Arbitration Act and the clear and unmistakable standard, requiring plaintiffs to arbitrate her New York Labor Law, Fair Labor Standards Act, and Wage Parity Act claims. What's the language that's used here? All claims in any manner shall be subject exclusively to, and then it doesn't say arbitration, it says the grievance and arbitration procedures below, right? That's correct. So that doesn't compel arbitration, just by itself, right? That specific language by itself defines the intent of the parties here, which is- No, no, no. It doesn't compel arbitration. It doesn't say subject exclusively to arbitration. And then we go to the next clause four, and it talks about in the event that an employee has requested, if the employee requests in writing that the union grievance procedure, that the union process a grievance, then it says an employee solely on behalf of, and the union doesn't do it, an employee solely on behalf of himself, slash herself, may submit their individual claim to mediation or following the conclusion of mediation to arbitration. Why wasn't Judge Weinstein totally correct here? Because Pyatt controls this matter, Your Honor. I'm sorry? Pyatt, the United States Supreme Court decision in Pyatt. Pyatt specifically controls this matter. In Pyatt, the Supreme Court specifically held that a union has broad authority to bind employees to arbitrate their statutory claims as long as the waiver is clear and unmistakable. Yes, but what's so clear and unmistakable about this one that arbitration is compelled? Well, the Supreme- Both in terms of the first clause, which confines it to the procedures, and then in clause four, which says that if the employee has requested, which hasn't been done here, an employee solely on behalf of herself may submit that claim to arbitration. But Judge Weinstein- How is unmistakable? Why is that unmistakable? But Judge Weinstein's concern was with the manner in which an employee could proceed to arbitration. In fact, Judge Weinstein laid out and said, well, this collective bargain agreement isn't between only the union and the employer. Where are the employee's rights? Where is the request or the mandate that the employee grieve her claims? Well, I bring you back to Pyatt. Pyatt's collective bargain agreement specifically made no mention of an employee, and specifically Pyatt held that there is no legal basis for the court to strike down the arbitration clause in the CBA, which was freely negotiated by the union and the Realty Administrative Board, and which clearly and unmistakably requires response to arbitrate age discrimination claims. Now, in Pyatt, if the court looks to CBA- What does that have to do with this case? If the court looks to C- It didn't involve an individual arbitrating. Yes, it did. There was three plaintiffs in the Pyatt case. And if you look at the CBA, which was at issue with the Supreme Court, there is not one mention in any of the provisions that the Supreme Court looked at of an employee's individual right to proceed to arbitration. In fact, the CBA in Pyatt specifically referenced only the union and the employer as the two individual parties. And this is despite the fact that the petitioners, the employees in Pyatt, specifically argued to the Supreme Court that there was no individual mandate requiring them to go to arbitration. Now, I've brought copies of the CBA at issue in Pyatt with me, if the court would like copies, but I think the court can pull it from the docket itself. And the court can also pull the briefs, which contain the petitioners' arguments in that case. You're saying this is a stronger case than in Pyatt, because there is a reference in the agreement to employees, and it says, to ensure the uniform administration and interpretation of this agreement in connection with federal, state, and local wage hour and wage parity statutes, all claims brought by either the union or employees asserting the violations of these specific statutes shall be subject exclusively to grievance and arbitration procedures. That is correct, Your Honor. I believe this case is specifically stronger than Pyatt, because here we're specifically talking about... Isn't the clause 4 an aspect of the procedures? It is, but only in the event the union declines the procedure. You have to recall here in this situation when you're collectively bargaining, a union stands in the shoes of the employee. The union is the deemed representative of the employees. So when Pyatt spoke about analyzing the CBA and referred to the parties, the parties to the CBA are always going to be the union and the employer. They are never going to — an employee will never sign an arbitration — will never sign a collective bargaining agreement in those circumstances. So here, if the union disclaims the rights of the employee to proceed to arbitration because the union decides the claim is not meritorious, the union still — the collective bargaining agreement still needs to provide an avenue by which the employee can proceed with their claims, should they so choose. And that is to prohibit a circumstance where the union controls the outcome of the claims at issue. Because if the union were to say to the employee, we're not going to proceed with your claim, and the collective bargaining agreement here says that you can't proceed without us, the union, then we're in a different situation. We're in a situation — But we need to provide that the employee can pursue a grievance and arbitrate on his own or her own. Correct. But at the same time in doing that, you do have to be clear and unmistakable about the arbitration provision. And why doesn't paragraph 4, subparagraph 4, confuse what might otherwise be the clear language of subsection B? There's no indication in 4, in subsection 4, that the employee can go to court for arbitration. There's no reference, in fact, to anywhere in the arbitration provision specifically referencing court. It could be equally — But it says may submit their individual claims to mediation or arbitration. An employee could equally just abandon their claims. Why isn't that equally — Of course they could. They could do a lot of things. They could choose not to arbitrate. They could choose not to arbitrate, but it doesn't say that they could choose to go to court. Why does it have to do that? That's the right of everybody. In fact, Your Honor, there is actually a case that was decided after this full submission of these briefs. And it was a case called Lobin in the Southern District of New York, decided October 29th, 2018, 345 F sub 3D, 334. And in that particular case, the court addressed that because of a strong Federal policy favoring arbitration, the employee is bound to arbitrate a discrimination claim even if the union declines to pursue the claim. Now, the Southern District said in response to the question or the arguments by the appellant, I mean by the employee, that the arbitration at issue did not require them to go to arbitration. The same issue — the same thing that's at issue here today. The appellee is claiming that they do not — they are not required to proceed to arbitration. Lobin answers that question. He specifically says, well, that's fine. You can argue that nothing in the collective bargaining agreement requires you to go arbitration. But that's because of the fact that if we prevented you from proceeding to arbitration, then we have a waiver of your entire statutory rights. I appreciate you've gone over. If I could just ask you a question. May I understand that as you construe Section 8, it presupposes an employee grievance proceeding at the beginning? Because the way I was trying to read this in its totality, what I'm understanding is that you're — that the CBA requires there to be a grievance by the employee — a grieved employee to the union. The union will either pursue it within the statutory limitations period or it won't. If they do, then there are certain things that happen. If they don't, then the employee has the ability, if he or she chooses, to go to court. Is that — so I realize that some of this is Monday morning quarterbacking, but would have been nice, no? If there had been somewhere in Section 8 a sentence that said, any aggrieved employee must first bring a grievance to the union. Well, I think the union stands in the shoes of the employee. And as part of a national federal policy as it relates to labor law, right, the grievance process is a term of art. And it's clear, and especially in union parlance, it's clear that an employee needs to grieve a particular claim or the union can proceed with a particular grievance if it's aware of a particular issue. Now, of course, everything — You're saying that we have to look at the overall context and the practices in which arbitration — these arbitration provisions are handled. That's correct. And especially — But the language — that somehow eradicates the fact that the language itself is not clear and unmistakable and makes it clear and unmistakable. Well, I think there's still — We have to look now to the practices in the industry. Well, I think we also have to look at the party's intent. And I think by reading Article VIII, Section B of the arbitration provision, it's clear that the intent of the union and the employer was to bind the employees and the union to arbitrate specifically these disputes under the Fair Labor Standards Act, the New York Labor Law, and the Wage Parity Act. So we can skip over the language and just look at the intent or the purpose. I think that's one of the things the court can look at. It can look at the clear and unmistakable standard. It can look at the federal policy towards arbitration under the Federal Arbitration Act. Is it possible, if I think that the intent was as you say it was, that the language is not clear and unmistakable — No, Your Honor. — that you could win? No. Right? You can't win if the language is not clear and unmistakable. I think we can win, Your Honor, because I still believe the language is clear and unmistakable. We're debating that. Well, the elements to be clear and unmistakable is the arbitration clause contains a provision that explicitly provides that all causes of action arising out of employment be submitted to arbitration or that the arbitration clause specifically references or incorporates the relevant statutes into the agreement to arbitrate. The arbitration provision here specifically references those three statutes, which are subject to arbitration. How does that affect the clear and unmistakable language of the duty to arbitrate? The fact that the statutes are spelled out. That's beside the point. Well, Your Honor, the statutes are spelled out specifically, and there is an intention to arbitrate this matter. Specifically, the arbitration clause here spells out what is required. As I stated before, Pyatt controls. If you look at Pyatt and you look at the arbitration clause at issue in Pyatt, you will see that there's no mention of employee anywhere in the collective bargaining agreement in Pyatt. And yet the court was still found and held specifically over objection by the parties below that there was no specific mandate for them to go to arbitration. But yet the court specifically said, you are required to go to arbitration. Thank you. Good morning. May it please the Court. Birkert McInturff from Wattel's Law for Plaintiff Appellee in the proposed class. If I may, I'd like to begin with my adversary's invocation of Pyatt. The Pyatt case very explicitly, the Supreme Court in Pyatt made clear that the plaintiffs below did not challenge whether or not the arbitration clause at issue in Pyatt was clear and unmistakable. On page 272 of the opinion, I'll read from Pyatt. It says, quote, Finally, respondents offer a series of arguments contending that the particular CBA at issue here does not clearly and unmistakably require them to arbitrate their ADA claims. But respondents did not raise these contract-based arguments in the district court or the court of appeals. To the contrary, respondents acknowledged on appeal that the CBA provision requiring arbitration of their federal anti-discrimination statutory claims is, quote, sufficiently explicit in precluding their federal lawsuit. So it's our view that Pyatt does not solve this question. In fact, the question is conclusively solved by this Court's opinion in Lawrence, which requires that the arbitration clause not be susceptible to any contrary reading. And as Judge Weinstein found, the arbitration clause is susceptible to a contrary reading. In fact, as plaintiffs Coming out with that, because I'm having difficulty reading a subdivision to the larger subsection B to introduce ambiguity given the lead-in to subsection B, which does many of the things we said we should do in Lawrence. It lists specifically the statutes, the Fair Labor Standards Act, the New York Home Care Worker Wage Parity Act, New York Labor Law, and it says, All claims brought by either the union or employees asserting violations of these specifically named statutes in any manner shall be subject exclusively to the grievance and arbitration procedures described below. I mean, just reading the contract as a whole, why does that not clarify any ambiguity that might otherwise exist? Two points, Your Honor. First, as Judge Walker pointed out, that prescribes the procedures described below. It's a general invocation of a procedure that both the union or employees are to take, and then the more specific provision in 4 requires the employee to request in writing. So the general invocation of procedures is followed by the much more specific, permissive alternative dispute resolution procedure set forth in 4. Regarding Your Honor's first question about the invocation of the specific statutes, the prior case law, which Lawrence falls into the category of it, involves cases where mandatory arbitration was not a question. It was whether statutes were subject to mandatory arbitration. This case is the inverse. There's no question that the statutes have been invoked here. It's whether or not arbitration is mandatory. As Judge Weinstein found, and we believe correctly, arbitration is not mandatory. This is simply a dispute resolution procedure that allows employees to, if they so choose, as the plain language of the agreement states, if they request in writing that the union grieve a claim and then the union refuses to grieve that claim, the employee, quote, may initiate the arbitration proceedings. So there's, in fact, two conditions precedent. The employee must request in writing at the employee's election, and then they may avail themselves of the arbitration process. That simply is not clear and unmistakable. And as this Court said in Lawrence, the arbitration agreement must not be susceptible to a contrary reading. We believe it's not susceptible to a contrary reading. It's clearly permissive. But if we were to allow ambiguity to introduce itself into the agreement, we have to conclude that it is not clear and unmistakable because it says the employee may go to arbitration, and it only is operative in the event that the employee requests in writing a grievance. It's the paragraph that introduces that option. And the counterargument would be it says may because the employee has to make a decision. The union is not going to represent them. Are they going to proceed with the grievance, or are they not going to proceed with the agreements? It wouldn't say must in that subdivision because the employee has to make a decision. But the opening paragraph says that these procedures shall be exclusive, the word exclusively in the opening paragraph. Again, I think that the operative term is procedures. So these are the exclusive procedures that an employee must follow if they enter this alternative dispute resolution procedure. And to answer your Honor's question about the ‑‑ So it says all claims shall be subject exclusively to these procedures. So what it needed to say would be something like all claims may not be brought in court, but are subject exclusively to these procedures. All claims shall be arbitrated. All claims must be arbitrated. Any grievances must be arbitrated. So it's not enough to say all claims brought by employees under asserting violations of these statutes shall be subject exclusively to these procedures without that additional may not be brought in court or are subject solely to arbitration. As Judge Weinstein ruled below, he stated that it does not require the employee to bring a grievance. And paragraph 4 makes it clear that a grievance is optional. The analogy that we've kicked around at our law firm is if you go to a haunted house and you see a sign and it says all patrons must exit through the rear door, it doesn't mean you have to go into the haunted house. You can walk in and you can turn right back around and go back through the door you went in. You don't have to get scared. This is the same type of procedure. If the employee wants to avail themselves of the procedure, they can go through and they must, as the agreement says, they must follow the procedures described below. But the agreement does not require that the employee follow the procedures. So what is the purpose of having an introduction to the article that says that all of these claims and then listing the statutes shall be subject exclusively to the grievance and arbitration procedures described below with no mention of the word litigation? Isn't it not a more comfortable reading to say that Section 1 of this article requires that there be a grievance brought and then tells you what happens if the union decides not to pursue the grievance? First, Your Honor, the standard is not whether or not it's a more comfortable reading. It's whether it's a clear and unmistakable reading. And it's our view that it's not clear and unmistakable. But even if enlisting all of these statutes, the drafters to the agreement, remember the agreement's drafters are trying to deal with both a union versus employer dispute as well as potentially an employee versus employer dispute. So it's perfectly comfortable for the court to read that all disputes between the union and the employer must go through, must be arbitrated because that's what the agreement says. But when it turns to the specific provisions for the employee, those provisions, unlike the remainder of the agreement, are not mandatory. And I might even agree with you, except it says all claims brought by the union or employees. So if you want to worry about the union employer and then the employee employer disputes and have them broken out in that way, this particular introduction to the article suggests that they are to be, that they're being resolved in the same format. Fair enough, but the language that follows makes clear that, in fact, it's an optional proceeding. So, again, to use the haunted house analogy, if you elect to go into this proceeding, you must follow the rules set forth according to the proceeding. But it doesn't require employees to enter into this alternative dispute resolution process. You made the argument the other way, that ambiguities, generally speaking, in arbitration clauses should be decided in favor of arbitration. Well, Your Honor, the Supreme Court in the Wright v. Universal Marine case made it clear, and I'll quote from Wright on page 80, this is 525 U.S. 70, and I'm quoting from page 80, quote, the right to a federal judicial forum is of sufficient importance to be protected against less than explicit union waiver in the CBA. And, in fact, Wright went on, again, this is also, this is on page 79, quote, not only is a petitioner's statutory claim not subject to a presumption of arbitrability, we think any CBA requirement to arbitrate must be particularly clear. So, in fact, in this specific context of a union and an employer potentially waiving an employee's statutory right to a federal forum for a statutory claim, there is not a presumption in favor of arbitrability. Thank you, Your Honor. Hello again. Just a couple points. With respect to Pyatt, yes, Plaintiff's counsel is correct. There is a mention in Pyatt that specifically says that the employees did not raise certain issues below, but that's a reference to pages 44 and 47 of their briefs. And, in fact, the arguments that I'm talking about with respect to the clear and unmistakable standard and whether or not they have a duty to arbitrate is actually on page 73 of their brief. Just for the Court's clarification, that was not cited. Those specific pages in the Pyatt brief were not cited by Pyatt, the Supreme Court. Two, with respect to the Plaintiff's citation to Wright and the presumption of arbitrability, Wright didn't consider the presumption of arbitrability under the Federal Arbitration Act. Wright considered the presumption of arbitrability as it relates to the Labor Management Relations Act. In fact, in the footnote in Wright, it specifically says that we did not consider the Federal Arbitration Act as it relates to the presumption of arbitrability. And, in fact, this Court has specifically said that Wright has not considered the Federal Arbitration Act, that the Wright case did not consider the Federal Arbitration Act with respect to the presumption of arbitrability. In fact, I don't think that there's been a Second Circuit decision that has said whether the Federal Arbitration Act's presumption of arbitrability applies in the collective bargaining agreement. And I think that's something that's missing, because the jurisprudence as it's developed since at least 2009 with respect to arbitration agreements and the numerous times that the Supreme Court has considered arbitration agreements, there's been a specific Federal policy towards arbitration. And here, we add the additional wrinkle of the clear and unmistakable standard. Now, there is confusion, at least down below in the courts, because in the Chan case, in the Mazza case, which I've cited in my brief and which Plaintiff's counsel has cited in their briefs as well, they don't mention the clear and unmistakable standard, despite the briefs being written to the Court identifying the clear and unmistakable standard as something the Court should consider. But the courts below relied on the Federal Arbitration Act, which I think is important for the Court to note, because there's also another case in the district court level, Restia, which analyzed the clear and unmistakable standard under the scope analysis of the Federal Arbitration Act, whether there's an intention to arbitrate and whether or not the claims fall within the scope of the arbitration agreement. So what do you contend that the clear and unmistakable standard applies to? I believe that the clear and unmistakable standard applies merely here to the scope of the agreement. And the scope of the agreement here specifically covers the New York Labor Law claims, the Fair Labor Standards Act claims, and the Wage Parity Act claims. In fact, if we continue going... It's not totally unremarkable that parties with a specific intent do not capture that intent sufficiently in the language. And if one looks at the language in the text, then you start there, and you're working away from that. I mean, it's certainly possible that a reasonable person could say, of course they intended to arbitrate here, but they didn't carry it out in their language. And I think we just... I'm out of time, but I think we just have to keep going back to the preamble, which I'm calling Section B of the agreement, which lays out... That's the point that I think my colleagues have pointed out, indicates a pretty clear intent to arbitrate. That's correct, Your Honor. However, then you've got Section 4. Good luck. Thank you. Thank you both. We'll take it under advisement. Well argued. Thank you.